Exhibit 7

Page 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x
KEITH TURNER,

                    Plaintiff,

      - against -

NYU HOSPITALS CENTER, NYU MEDICAL
CENTER, NYU SCHOOL OF MEDICINE and
NYU HEALTH SYSTEM,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - x

                              November 30, 2006
                              12:55 p.m.

        DEPOSITION of MARK PARAUDA, a witness appearing

on behalf of the Defendant, taken by the attorney

for the Plaintiff, pursuant to Notice, held at the

offices of GOLDBERG & FLEIGEL, LLP, 60 East 42nd Street,

New York, New York, before Michael Catania, a Notary

Public of the State of New York.

               *       *       *       *

6b4011a4-caec-4ba5-bab0-55dfbad62ff2

Page 38

Parauda

1
2    A.  No.  I don't recognize it.
3    Q.  It could be somebody in payroll
4  because it appears next to the payroll stamp.
5    A.  No.  I can't even tell you what
6  letters they are.
7    Q.  I will show you what has been marked
8  for identification as Plaintiff Exhibit No. 85.
9        Are you familiar with those
10  documents?
11    A.  Yes.  I am familiar with them.
12    Q.  Are these materials that you gave to
13  Mr. Turner on June 14, 2004?
14    A.  Yes.
15    Q.  You gave these to him at your office
16  when you gave these to Mr. Turner?
17    A.  Yes.
18    Q.  Did you speak with Mr. Turner when
19  you gave him the documents?
20    A.  Yes.
21    Q.  What did you say?
22    A.  I don't remember exactly.  But I
23  would imagine I would go through with him and
24  let him know what the severance is, and the
25  benefits and that kind of thing.

Page 39

Parauda

1
2        And talking to him about COBRA, and
3  if he has any questions.
4    Q.  Did you discuss with him whether he
5  had a future at NYU after receiving the
6  document?
7    A.  I discussed with him that he is
8  eligible for rehire.
9        And I explained to him if you are
10  rehired during the severance period, then your
11  severance would end and you would get the
12  paycheck from the new department.
13    Q.  And the severance period for Mr.
14  Turner, according to your correspondence with
15  him, was the medical coverage was going to
16  continue through July 31, according to the first
17  page of this document; right?
18    A.  Yes.
19    Q.  It says, "You are eligible for four
20  weeks of notice pay and one week of severance
21  pay."
22        He was going to receive five weeks of
23  severance under this document; is that right?
24    A.  Yes.
25    Q.  He was going to get continued

Page 40

Parauda

1
2  compensation into the month of July?
3    A.  Yes, the five weeks after June 14.
4    Q.  He was eligible in that time frame
5  subject to NYU stopping paying him.
6        MR. SHAPIRO:  Objection to form.
7    A.  I don't know if he was eligible for
8  rehire.  This is more of a general form that
9  says if you are eligible and if you are hired
10  for a position and this is what would happen.
11    Q.  Mr. Turner had been employed for more
12  than one year?
13    A.  Yes.
14    Q.  The materials that I showed you said
15  that he had recall rights for four months; is
16  that correct?
17        MR. SHAPIRO:  Objection.
18    A.  No.
19    Q.  Four month recall rights for an
20  employee --
21        MR. SHAPIRO:  I am objecting to your
22  questions.
23        MR. GOLDBERG:  Don't make a lengthy
24  objections.  We have been delayed because of the
25  400 page of documents and the late witness.

Page 41

Parauda

1
2    Q.  The papers I showed you indicated
3  four months of rehire?
4        MR. SHAPIRO:  Objection.
5    A.  For eligible employees.
6    Q.  There is nothing that says Mr. Turner
7  was not eligible for recall in the materials you
8  gave him.
9        MR. SHAPIRO:  Objection to form.
10    A.  It does not say that.
11    Q.  There is nothing that says that he
12  was not eligible for rehire; is that true?
13        MR. SHAPIRO:  Objection.
14    A.  Yes.
15    Q.  After June 14, did you ever contact
16  Mr. Turner to be rehired or rehired by NYU?
17    A.  I don't believe I did.
18    Q.  To your knowledge, did anyone at NYU
19  ever contact Mr. Turner to be rehired or
20  recalled?
21    A.  I don't know.
22    Q.  In 2003 the evaluation says that he
23  meets requirement, and that was in September
24  2003?
25    A.  I don't remember the date.  I will

Page 50

Parauda

1
2     MR. SHAPIRO:  Objection to form.
3     A.   Received in payroll July 16.
4     Q.   And signed by the boss on July 8,
5  '04?
6     A.   Yes.
7     Q.   And this form for termination is done
8  after someone is fired, and that's the standard
9  practice; right?
10     A.   I am not familiar with the forms.
11     Q.   Is it usually done after someone is
12  fired, to your knowledge?
13     A.   It stands to reason, I guess.
14     MR. SHAPIRO:  If you don't know, then
15  tell him.
16     MR. GOLDBERG:  Mark that as Plaintiff
17  Exhibit No. 101. This has Bates numbers NO-874,
18  NO-876, which are documents that were handed to
19  me today.
20     (Exhibit P-101, E-mails, NO-874-876,
21  marked for identification.)
22     Q.   I was given Exhibit 101 by your
23  attorney today.
24     This appears to be a set of e-mails
25  in which you are one of the participants in the

Page 51

Parauda

1
2  correspondence; is that right?
3     A.   Cc'd on first one.
4     Q.   Right. You are someone who received
5  some of these e-mails that are contained in this
6  exhibit or you sent them; right?
7     A.   Yes.
8     Q.   As I see the e-mails, and I wanted to
9  make sure I understand what they say, there is
10  an e-mail from June 14, 2004 at 8:52 a.m. which
11  you can see on the first page of the exhibit.
12     That is an e-mail that purports to be
13  from Mr. DeGazon to Ms. Odom.
14     Do you see that?
15     A.   Yes.
16     Q.   It indicates that Miss Sutowski will
17  be terminated at 1:00 p.m. and Mr. Turner will
18  lose his job at 1:30.
19     And Mr. DeGazon puts in here what he
20  plans to tell Ms. Sutowski and Mr. Turner?
21     A.   Yes.
22     Q.   Mr. Odom cc's you and says that Boza
23  is a straight termination and --
24     A.   Yes.
25     Q.   Then you wrote an e-mail, and I guess

Page 52

Parauda

1
2  you chimed in at this point and gave some
3  information; is that correct?
4     A.   Yes.
5     Q.   You wrote that, "If she is being
6  fired for cause, she doesn't need to see you and
7  will receive no severance pay."
8     A.   Yes.
9     Q.   If she is part of the layoff, she
10  will get severance pay and meets with you?
11     A.   Yes.
12     Q.   According to NYU, Ms. Sutowski was
13  fired for cause and did not meet with you; is
14  that correct?
15     A.   Yes.
16     Q.   Mr. Turner was laid off and met with
17  you and received severance pay; is that correct?
18     A.   Yes.
19     Q.   There is nothing contained in this
20  string of e-mails that says Mr. Turner is
21  ineligible for rehire; is that correct?
22     MR. SHAPIRO:  Objection to form.
23     Q.   Looking at the pages in front of you
24  there is nothing in there in which anyone says
25  that Mr. Turner is ineligible for rehire or

Page 53

Parauda

1
2  recall; is that correct?
3     A.   I do not see it, no.
4     Q.   The initial e-mail on this topic came
5  from DeGazon who was Director of Building
6  Services on June 14, 2004; is that correct?
7     MR. SHAPIRO:  Objection to form.
8     A.   Yes.
9     Q.   The head of the department; correct?
10     A.   Associate director.  That's his title
11  down here.
12     Q.   That's the signature block.  I can
13  show you if you want to see your own NYU
14  documents that made him Director.
15     In any event, Mr. DeGazon sent the
16  initial e-mail that started this string?
17     A.   Yes.
18     Q.   He is the one who terminated Miss
19  Sutowski and let Mr. Turner go the same day?
20     A.   It appears that day, but I don't
21  know.
22     MR. SHAPIRO:  Objection to form.
23     Q.   Ms. Sutowski was terminated for cause
24  and her job was not eliminated; is that correct?
25     A.   Based on this e-mail, yes.

14  (Pages 50 to 53)

Parauda

2  Q.   This is the way I received the
3  document.
4        Did you ever see this document
5  before?
6  A.   I don't -- no.
7  Q.   You do see that looking at Exhibit
8  No. 9, the 262 number that appeared on 104 made
9  its way onto this form that pertains to Mr.
10 Turner; right?
11 A.   Yes.
12 Q.   The 252 that you said in your e-mail
13 is not on the form, but the 262 is; correct?
14 A.   Yes.
15 MR. GOLDBERG:  Mark as Plaintiff
16 Exhibit No. 106 Bates number NO-879.
17       (Exhibit P-106, Note to file,
18 4-16-04, NO-879, marked for identification.)
19 Q.   I have another question for you on
20 this document.
21       If you look at the exhibit in the
22 bottom right-hand corner has a section called
23 "Termination"; right?
24 A.   Yes.
25 Q.   Then it has boxes about whether

Parauda

2  someone is, I guess, a rehire.
3        Is that a rehire indication?
4  A.   I don't know what that is.
5  Q.   Do you see that the box "no" is
6  checked on this form?  Do you see the box "no"
7  and it is checked?
8        It says rehire on one line, and that
9  box is not checked and the one box down is
10 checked as no.
11 A.   I don't know if that corresponds with
12 it.  It looks like what it says.
13 Q.   Are you involved with or familiar
14 with the form in this section called
15 "Termination"?
16 MR. SHAPIRO:  Objection to form.
17 A.   I am familiar with that aspect of it.
18 Q.   Do you understand that in this
19 section of Exhibit No. 9 from August 3, 2004 it
20 indicates don't rehire Keith Turner?
21 MR. SHAPIRO:  Objection to form.
22 Q.   Or does it indicate rehire Keith
23 Turner?
24 MR. SHAPIRO:  Objection to form.
25 A.   To be honest with you, it looks like

Parauda

2  it says no.
3        But I can't say if the stamp got in
4  the way.  It is not clear to me.
5  Q.   Does NYU make re-employment rehiring
6  decisions based upon information in a
7  Confidential Personnel Profile in the bottom
8  right-hand section?
9  A.   I don't know.  That's one way of
10 indicating it.
11 Q.   This is a document that becomes part
12 of the permanent personnel records for the
13 employee; right?
14 A.   I believe it does.  I don't know.
15 Q.   If you look at 106, that is a note to
16 file by you about Miss Sutowski --
17 A.   Yes.
18 Q.   -- dated April 16, '04.
19       Does that help you put into context
20 you met with her?
21 A.   That seems correct.
22 Q.   Do you believe now that your meeting
23 with Ms. Sutowski took place around that date?
24 A.   I don't know if that is the date I
25 met with her, but it was around that date.

Parauda

2  Q.   This is a fairly simple note.  Is
3  there a particular reason why you wrote this
4  note?
5  A.   I imagine I was going to put note to
6  file regarding my meeting with her.
7  Q.   I guess what I am wondering is:  Is
8  there a reason why there is not a more detailed
9  memo saying this is what we talked about and
10 this is what I said and what she said?
11 A.   I don't remember why I stopped
12 preparing the document.
13 Q.   I will show you did Corie Fromkin.
14 Do you know Miss Fromkin?
15 A.   Yes.
16 Q.   Do you know that she's a former
17 employee of NYU?
18 A.   Yes.
19 Q.   We have talked about Mr. Turner and
20 Ms. Sutowski, and you know both of them?
21 A.   Yes.
22 Q.   You know Ms. Fromkin is a former
23 employee of NYU?
24 A.   Yes.
25 Q.   You know that she's a Caucasian

6b4011a4-caec-4ba5-bab0-55dfbad62ff2

Page 66

Parauda

```
 2  female?
 3      A.   I don't know that --
 4      Q.   By looking at her she looks white, as
 5  Mr. Turner and as does our court reporter, Mike,
 6  and me and your counsel?
 7      A.   Yes, based on appearance.
 8      Q.   Do you recall if she was an office
 9  manager when she was at NYU?
10      A.   I don't recall her title.
11      Q.   You recall that she was in the
12  Building Services Department; is that correct?
13      A.   Yes.
14      Q.   By looking at Exhibit No. 7 her name
15  is there as Office Manager; is that correct?
16      A.   Yes.
17      Q.   You can see that Jacqueline Richards
18  reported to her on Exhibit No. 7?
19      A.   Yes.
20      Q.   You know Ms. Richards to be a black
21  female; is that correct?
22      A.   Yes.
23      Q.   You knew that Mr. DeGazon was a black
24  skinned male?
25      A.   Yes, relatively speaking, yes,
```

Page 67

Parauda

```
 2  compared to me.
 3      Q.   And Robert Stephen is darker skinned
 4  than you?
 5      A.   Yes.
 6           MR. SHAPIRO:  Objection to form.
 7      Q.   Do you know that Mr. DeGazon and Mr.
 8  Stephen were both from Saint Lucia?
 9      A.   I knew that Udel was from Saint
10  Lucia.  I didn't know where Mr. Stephen is from.
11      Q.   You know Ms. Pinada to be Hispanic?
12      A.   Yes.
13      Q.   Miss Fromkin received an evaluation
14  in October '03 marked for identification as
15  Exhibit No. 17.
16           Did you see that document at any
17  time?
18      A.   I don't recall.
19      Q.   Did you ever review or investigate
20  Ms. Fromkin's job performance?
21      A.   No.
22      Q.   Did you ever meet with Miss Fromkin?
23      A.   Yes.
24      Q.   When did you meet with Ms. Fromkin?
25      A.   I met with Miss Fromkin frequently.
```

Page 68

Parauda

```
 2  We interacted frequently for Building Services
 3  type of work.
 4           I was the employee relations
 5  representative and she would contact me
 6  regarding issues.  I had a rapport where I
 7  talked to her a couple of times a week about
 8  issues.
 9      Q.   Did she bring to your attention any
10  complaints or concerns about Mr. DeGazon?
11      A.   Yes.
12      Q.   What did she bring to your attention
13  about Mr. DeGazon's conduct?
14      A.   I don't recall the specifics.  But
15  she did not like his management style.
16      Q.   Do you recall that he had made some
17  comments about her appearance, her dress and
18  appearance?
19      A.   I don't recall that.
20      Q.   Do you recall Mr. DeGazon calling her
21  "a skinny white girl" or words to that effect?
22      A.   I don't recall that.
23      Q.   Do you recall Miss Fromkin saying to
24  you that she felt Mr. DeGazon was nasty?
25      A.   I don't know if she said nasty.  She
```

Page 69

Parauda

```
 2  was not happy with his management style.
 3      Q.   When she spoke to you, she was pretty
 4  blunt because that's the type of person she is,
 5  very straightforward when she speaks.
 6           MR. SHAPIRO:  Objection to form.
 7      A.   I don't recall.
 8      Q.   She was angry the way Mr. DeGazon
 9  treated her, was she not?
10           MR. SHAPIRO:  Objection to form.
11      A.   I don't recall.
12      Q.   Did you believe her to be an honest
13  person in dealing with him?
14      A.   I didn't form an opinion one way or
15  the other.
16      Q.   Did you ever see these time records
17  when Ms. Fromkin was an NYU employee?
18      A.   These are time sheets.
19      Q.   Did you --
20      A.   I don't know if I saw this one
21  previously.
22      Q.   Did you ever review Ms. Fromkin's
23  time sheets, time cards?
24      A.   Not that I recall.
25      Q.   I will show you Exhibit No. 19 marked
```

18  (Pages 66 to 69)

Page 98

Parauda

```
 1              Parauda
 2        I have done this exercise with other
 3   witnesses so that this will be no surprise to
 4   counsel.
 5        I want you to go through the exhibit
 6   and put Post-Its on the pages that you saw at
 7   the time the documents were generated.  Some may
 8   be from you to somebody, but I want you to go
 9   through it and put Post-Its on the ones you saw.
10     A.   The ones that I remember seeing at
11   the time, and even if my name is on it, do you
12   want me to put a Post-It on it?
13     Q.   Looking at this now, if you have a
14   specific recollection or you are pretty sure
15   that you did because it has your name on it, I
16   will take it with a Post-It on it.
17        I will go off the record to allow you
18   to do that.  Does that make sense to you?
19     A.   If I have any questions, I will call
20   you.
21     Q.   Right.  It is not a complicated task.
22        (Recess taken at this time.)
23     Q.   You have Exhibit No. 46 before you.
24        Have you had a chance to review the
25   exhibit?
```

Page 99

Parauda

```
 1              Parauda
 2     A.   Yes.
 3     Q.   Did you put Post-Its on pages you saw
 4   when those documents were generated?
 5     A.   That I remembered, yes.
 6     Q.   You put a Post-It on NO-840 and you
 7   put a Post-It on NO-841?
 8     A.   That's both pages.
 9     Q.   And then 842?
10     A.   Yes.
11     Q.   So that there are three pages from
12   Exhibit No. 46 that you have identified as
13   materials that you have seen before.
14        The first page of those three, NO-840
15   that has an e-mail from Fromkin to you enclosing
16   the memo of complaint by Ms. Sutowski.
17        MR. SHAPIRO:  Objection to form.
18     A.   Yes.
19     Q.   You forwarded that letter on to Mr.
20   Odom, is that right, according to your e-mail?
21     A.   Yes.
22     Q.   Did you also read the letter before
23   forwarding it over -- after forwarding it?
24     A.   Yes.
25     Q.   At the time that you met with Ms.
```

Page 100

Parauda

```
 1   Sutowski -- and let's say April 16, '04 you had
 2   already seen her February memo; right?
 3        MR. SHAPIRO:  Objection to form.
 4     Q.   You had already read this?
 5     A.   Yes.
 6     Q.   Sitting here today, you may not
 7   recall the details of the memo.  But back then
 8   you did because you had read it; right?
 9        MR. SHAPIRO:  Objection to form.
10     A.   When I reread it just now.
11     Q.   It came back to you?
12     A.   A little bit.
13     Q.   When you met with Miss Sutowski, you
14   were aware of the issues she had raised in her
15   memo; correct?
16     A.   Yes.
17     Q.   Did you discuss --
18        MR. SHAPIRO:  Objection to form.
19     Q.   Did you discuss this memo with Ms.
20   Sutowski in April '04?
21     A.   I don't recall.
22     Q.   Does this documentation that you are
23   looking at lead you to conclude that you saw Ms.
24   Sutowski earlier than April 16 in some other
25
```

Page 101

Parauda

```
 1   meeting, or do you still think there was just
 2   the one meeting?
 3        MR. SHAPIRO:  Objection to form.
 4     A.   I don't know one way or the other.
 5     Q.   This says, "Here is another letter of
 6   complaint from an employee in Building
 7   Services."
 8        Could you tell me whether there were
 9   other letters?  Because the e-mail makes it
10   sound like there were.
11        MR. SHAPIRO:  Objection to form.
12     A.   I don't recall.
13     Q.   Here is another letter of complaint
14   in the e-mail.  And the implication of that is
15   that there was another letter besides this one.
16        MR. SHAPIRO:  Objection; form.
17     A.   I don't know.
18     Q.   If this was the only letter that you
19   received, would you have said "here is another
20   letter of complaint"?
21        MR. SHAPIRO:  Objection to form.
22     Q.   When you wrote this, there were other
23   letters.
24        But sitting here, you don't recall?
```